**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| Malikah Shabazz, Sonya Harvey, Rosa Sanchez, and Frank Taylor, *individually, and on behalf of all others similarly situated,*<br><br>                              *Plaintiffs,*<br><br>                    v.<br><br>New York City Campaign Finance Board, Amy M. Loprest, *solely in her official capacity, as the Executive Director of the New York City Campaign Finance Board,* Hillary Weisman, *solely in her official capacity as the General Counsel of the New York City Campaign Finance Board,* and the City of New York.<br><br>                              *Defendants.* |

Docket No. _____

**COMPLAINT**

Plaintiffs, for their complaint, allege as follows:

## INTRODUCTION

1.     Under the New York City Campaign finance law, residents of the City of New York contribute to municipal candidates with the expectation that their contributions will be matched by taxpayer dollars at a ratio of $8 dollars for every $1 that is contributed up to certain levels depending upon the office sought.  And Plaintiffs' campaign contributions would have gotten that matching until the City Council changed the rules in the middle of an election.

2.     Plaintiffs — and the members of the class they seek to represent — all contributed to a candidate for the Democratic Party nomination for the New York City Council, Hiram Monserrate, in support of his candidacy in the Democratic

Party primary elected to be held June 22, 2021.

3.     They did so in reliance on the law, as it existed at the time they donated.

4.     However, the New York City Campaign Finance Board ("CFB") — the agency that administers the public matching funds program — refused to undertake its routine assessment of the contributions or approve matching funds for Plaintiffs' and other similarly situated contributors' contributions.

5.     The CFB claimed that a New York City law (Local Law No. 15) just signed into law in late February of 2021 (after each Plaintiff had already made contributions) barred it from providing public matching funds to a candidate who was purportedly disqualified from holding municipal office.  That is, they relied on a rule changed in the middle of an election.

6.     But Local Law No. 15 did not bar Monserrate (or any theoretical candidate who the law might also apply to) from having his contributors' donations matched from running for office, or from appearing on the ballot

7.     Even if the law *did* address the candidate's right to appear on the ballot in the first instance (it does not), for perhaps obvious reasons, it is unlikely that there exists "any legislation that has been found constitutionally sound when enacted during an election cycle that disqualifies previously qualifying candidates from appearing on a ballot." *Poindexter v. Strach*, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018).  *See also, Yang v Kosinski*, 960 F3d 119, 129 (2d Cir 2020) (future

application of a law "in 2024 may raise different issues that are not implicated in the circumstances presented at this stage of the case," in 2020).

8.      In short, as applied here, the law that the CFB relied on in refusing its statutory duty to match Plaintiffs' donations is unconstitutional, and Plaintiffs ask the Court to allow them — and all others in the same position — to receive the vested right to matching campaign funds given to their chosen candidate.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

10.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendants' primary place of business lies in the district.

## PARTIES

12.     Plaintiff Malikah Shabazz (Ms. Shabazz, she/her) is a resident of the 21st Council District of the New York City Council, City of New York, County of Queens, who made a $20 campaign donation to the "Hiram 21" committee on January 5, 2021.

13.     Ms. Shabazz has long been active in local politics, and also circulated designating petitions for candidate Hiram Monserrate to have him placed on the ballot of the Democratic Party primary election for the public office of Member of the City Council, 21st District, City of New York, to be held June 22, 2021.

14.     Ms. Shabazz is also a registered voter, enrolled in the Democratic

Party, eligible to vote in the Democratic Party Primary on June 22, 2021.

15.    Plaintiff Rosa Sanchez (Ms. Sanchez, she/her) is a resident of the 21st Council District of the New York City Council, City of New York, County of Queens, who made a $10 campaign donation to the "Hiram 21" committee on December 22, 2020.

16.    Ms. Sanchez is a community leader in local democratic clubs.  She has also circulated petitions for candidate Hiram Monserrate to have him placed on the ballot of the Democratic Party primary election for the public office of Member of the City Council, 21st District, City of New York, to be held June 22, 2021.

17.    Ms. Sanchez is also a registered voter, enrolled in the Democratic Party, eligible to vote in the Democratic Party Primary on June 22, 2021.

18.    Plaintiff Sonya Harvey (Ms. Harvey, she/her) is a resident of the 21st Council District of the New York City Council, City of New York, County of Queens, who made a $100 campaign donation to the "Hiram 21" committee on December 30, 2020.

19.    Ms. Harvey has been a teacher with the NYC Department of Education for 30 years, and she is currently a co-Democratic Party Assembly District Leader, a Democratic Party elected position, for Assembly District 35, along with Hiram Monserrate.  She circulated petitions for candidate Monserrate both this election cycle (to have him placed on the ballot of the Democratic Party primary election for the public office of Member of the City Council, 21st District, City of New York, to be held June 22, 2021) and the last cycle (in the District Leader race).

20.    Ms. Harvey is also a registered voter, enrolled in the Democratic Party, eligible to vote in the Democratic Party Primary on June 22, 2021.

21.    Plaintiff Frank Taylor (Mr. Taylor, he/him) is a resident of the 21st Council District of the New York City Council, City of New York, County of Queens, who made a $100 campaign donation to the "Hiram 21" committee on January 10, 2021.

22.    Mr. Taylor is a retired law enforcement professional who is the president of his block association, an executive on Community Board 3, and has contributed to Hiram Monserrate's campaigns in every race since Mr. Monserrate first ran for office nearly three decades ago.

23.    Mr. Taylor is also a registered voter, enrolled in the Democratic Party, eligible to vote in the Democratic Party Primary on June 22, 2021.

24.    Defendant CFB is New York City's official agency that regulates and administers the New York City Campaign Finance Law and all the candidates who run for municipal office in the City of New York.

25.    CFB administers NYC's "landmark" matching funds system (*see* http://www.nyccfb.info/program), which amplifies donations of average New Yorkers, in order to "provide candidates with a strong incentive to finance their campaigns by engaging with average New Yorkers instead of seeking large contributions from special interests" (*see* http://www.nyccfb.info/program/how-it-works).

26.    Defendant Amy M. Loprest is sued solely in her official capacity, as the

Executive Director of the CFB.

27.     Hillary Weisman is sued solely in her official capacity, as the General Counsel of the CFB.

28.     Upon information and belief, Defendant Weisman made the determination not to match funds donated to candidate Monserrate.

29.     Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York.  The City is authorized by law to maintain the CFB, and does maintain the CFB, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

30.     Upon information and belief, to the extent necessary, Defendants are the appropriate *Ex parte Young* defendants in that, collectively, they possess the authority and power to provide the relief requested by Plaintiffs.

## **FACTUAL ALLEGATIONS**

31.     Non-party Hiram Monserrate (along with Plaintiff Sonya Harvey) is the current Assembly Democratic Party District Leader for the 35th Assembly District in Queens.

32.     Monserrate is currently running for City Council in the 21st District, located in Queens.

33.     And consistent with that, Monserrate has been receiving campaign contributions since December 12, 2020.

34.     Monserrate has also collected — in the middle of a pandemic — the required number of petition signatures to appear on the ballot; he has timely

submitted them to the New York City Board of Elections, and the New York City Board of Elections accepted the petitions.

35.     Upon information and belief, because of Hiram Monserrate's presence in the race, other candidates with similar political constituencies have stayed out of the race because of Monserrate's candidacy.  That is, candidates who advocate similar policies viewed the field as filled because of Monserrate's announcement and candidacy dating back to December of 2020.

36.     Upon information and belief, Monserrate registered as a candidate for the City Council with the CFB on or around December 18, 2020, and made corrections, and upon paying a fine for a previous race ($26,473.00) on January 13, 2021, Plaintiffs' and other contributors' donations were matchable by the public campaign finance program.

37.     From December 12, 2020 until the present, according to public records, Monserrate has received 282 donations, totaling $18,070.

38.     Of those donations, 280 are of $300.00 or less, and well more than half are less than $50.00.

39.     And of those donations, 265 were made *before February 25, 2021*, when Local Law No. 15 was signed.

40.     Under the matching funds program, up to $175 per donor is eligible for matching at a rate of $8-to-$1.

41.     Thus, Plaintiffs — and all others similar situated — had a vested expectation that their contributions to the Monserrate campaign would result, in

total, in matching funds of somewhere over $100,000.00.

42.     However, after approximately 150 residents contributed to
Monserrate's campaign and after he filed his first disclosure statement with the
CFB demonstrating that he was a serious candidate who had raised substantial
monies and was entitled to approximately $100,000 in public matching funds, the
City Council enacted the bill that became Local Law No. 15 — which Mayor de
Blasio signed into law on February 25, 2021

43.     Local Law No. 15 provides, in relevant part:

Title:  A Local Law to amend the New York city charter, in relation to
the disqualification of persons from holding an elected city office for
certain felony convictions.

§ 1. The New York city charter is amended by adding a new chapter 50-A to
read as follows:

***

§1139 Qualification for Elected Office.  In addition to
any disqualifications for holding civil office in section 3 of the public
officers law, no person shall be eligible to be elected to, or hold, the
office of mayor, public advocate, comptroller, borough president or
council member who has been convicted, provided such conviction has
not been vacated pursuant to the criminal procedure law or title 28 of
the United States code or pardoned by the governor pursuant to
section 4 of article IV of the New York state constitution or the
president pursuant to section 2 of article 2 of the United States
constitution, of a felony, including an attempt or conspiracy to commit
a felony, defined in:

1. sections 155.30, 155.35, 155.40, and 155.42 of the penal law, if
the property stolen consisted in whole or in part of public funds;

2. section 666 of title 18 of the United States code;

3. section 1001 of title 18 of the United States code, if such
felony was committed through the use of, or in connection with,

such person's elected office;

4. sections 1341, 1343 and 1346 of title 18 of the United States code; or

5. section 1951 of title 18 of the United States code.

§ 2. This local law takes effect immediately.

*See* New York City Council, 2021 Int. No. 374-A.

44.    On February 15, 2021 — before Local Law No. 15 was even ostensibly in effect — the CFB was scheduled to make a matching fund payment to the Monserrate campaign.

45.    It did not do so.

46.    And on March 5, 2021, the CFB sent a "Notice of Ineligibility for Public Funds" to the Monserrate campaign, declaring that "Hiram Monserrate is ineligible to be elected to city office and therefore ineligible to receive public funds."

47.    On information and belief, there is only one candidate registered with the CFB to whom Local Law No. 15 applied:  Monserrate, with his guilty plea to violation of 18 U.S.C. 1341 in 2012.

48.    Upon information and belief, this was known to the City Council in voting on the law, and to the Mayor in signing it.

49.    Upon information and belief (and for obvious reasons), Monserrate's allocution in 2012 did not include any warning of consequences relating to holding future office.

50.    Upon information and belief, Local Law No. 15 does not currently apply and has not been applied to a single candidate besides Monserrate.

51.    Upon information and belief, Local Law No. 15 has not been applied to remove any currently sitting public official from office.

52.    In other words, upon information and belief, the sole subject of Local Law No. 15 was Hiram Monserrate, and with him, Plaintiffs and other voters and donors that support him.

## COUNT I
### *(42 U.S.C. § 1983:  First Amendment Right to Vote / Right of Association)*

53.    Plaintiffs incorporate by reference all the allegations above.

54.    Where a law places limits on the right of access to the ballot, it is evaluated under the Supreme Court's *Anderson-Burdick* test.

55.    That test applies to challenges brought by voters challenging their "right to support candidates *as voters*."  *Yang v Kellner*, 458 F Supp 3d 199, 212 (SDNY 2020) (emphasis in original).

56.    Plaintiffs — and all others similarly situated — had a vested interest in having their campaign donations matched.

57.    And when a case "call[s] upon" the Court "to consider the constitutionality of [a burden on these rights] as applied[,] … [t]here is no 'litmus-paper test' to answer th[e] question" of constitutionality.  *Yang v. Kosinski*, 960 F3d 119, 129 (2d Cir. 2020) (cleaned up), *quoting Anderson v. Celebrezze*, 460 U.S. 780, 789, (1983).  Rather, the Court "conduct[s] a two-step inquiry that applies to election-related restrictions."  *Id*.  In the first stage, the Court evaluates the burden the restriction places on voters and in the second applies the sliding-

scale, "*Anderson-Burdick* balancing test" if the restriction is not severe and "the more familiar test of 'strict scrutiny'" if the restriction is severe.  *Id.*

58.    The "retroactive application of [Local Law No. 15] imposes a severe burden on [Plaintiffs'] constitutional rights [because] prior to the enactment [], [Monserrate was] accepted to appear on the ballot, and no process was afforded [to HM] whereby [he] could challenge [his] decertification."  *Poindexter v. Strach*, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018).

59.    Moreover, even if Local Law No. 15 were ultimately applied as written it would only serve to make Monserrate ineligible to *hold* office.  It does not speak at all to matching contributions.

60.    But most importantly, and as noted above, upon information and belief, there exists no "legislation that has been found constitutionally sound when enacted during an election cycle that disqualifies previously qualifying candidates from appearing on a ballot."  *Id.*

61.    "The long line of cases upholding ballot access requirements are patently inapplicable, as limiting candidates through reasonable advance requirements provides no justification for the retroactive restriction of the right to vote" and that is harm of an "obviously severe nature."  *Ayers-Schaffner v. Distefano*, 37 F.3d 726, 730 (1st Cir. 1994).  *See also, Hirschfeld v. Bd. of Elections in N.Y.C*, 984 F.2d 35, 39 (2d Cir. 1993) ("[T]he public's interest in having [plaintiff] as an additional choice on the ballot clearly outweighed any interest the [BOE] may

have had in removing [plaintiff's] name two business days before the [g]eneral [e]lection.")

62.     Or, as the Second Circuit recently put it:  "application of [this law] in [future election cycles] may raise different issues that are not implicated in the circumstances presented at this stage of the case."  *Yang v Kosinski*, 960 F3d 119, 129 (2d Cir 2020).

63.     Thus, by virtue of being (1) an independently severe burden on the right of access to the ballot and (2) being a severe burden as applied because Local Law No. 15 was passed in the middle of an election cycle, and applied *to* that election cycle, Local Law No. 15 must pass strict scrutiny.

64.     However:

a.  Local Law No. 15 is not narrowly tailored to any state interest.

b.  Local Law No. 15 does not use the least restrictive means to advance its purpose.

c.  Local Law No. 15 fails to have the requisite relationship between its mechanisms and the state interest it purportedly serves.

65.     Thus, Local Law No. 15 fails strict scrutiny.

## COUNT II
*(42 U.S.C. § 1983:  Equal Protection / Due Process)*

66.     Plaintiffs incorporate by reference all the allegations above.

67.     The Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly situated [] be treated alike."  *City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439 (1985).

68.     Plaintiffs and other members of the putative class have been treated differently than other, similarly situated voters, without an adequate justification.

69.     Leading up to the passage of Local Law No. 15, all donors to campaigns were in an identical position:  if the campaign met certain requirements, voter-donors were assured their donations would receive $8-to-$1 matching.

70.     Plaintiffs and members of the putative class — like donors to all campaigns — had a vested interest in having their donations matched.

71.     However, Plaintiffs have been treated differently than the donors to every other campaign.

72.     No government interest can justify that disparate treatment, at least with regard to *vested* interests in fund-matching.

73.     Thus, as applied, Local Law No. 15 violates the Constitution's promise of equal protection, and related due process rights.


### COUNT III
*(42 U.S.C. § 1983:  Due Process /* Ultra Vires *Action / Failure to Follow Local Law No. 15)*

74.     Plaintiffs incorporate by reference all of the allegations above.

75.     Local Law No. 15 does not provide any authority at all to the CFB.

76.     All Local Law No. 15 says is that no one convicted of certain offenses "shall be eligible to be elected to, or hold" specified offices.  It says nothing of access to the ballot or campaign funds.

77.     While refusing to seat Monserrate upon election may be authorized under Local Law No. 15, withholding matching funds based upon his voters' and donors' contributions is not.

78.     Thus, the CFB did not have authority to refuse to match Plaintiffs' contributions.

79.     Moreover, the City Council did not have authority to enact Local Law No. 15, because the field is covered by State law.

80.     Local laws may not be inconsistent with a general law of the State relating to the same enumerated subject.

81.     Public Officers Law § 3 provides a set of criminal bars to office, including a period of years for certain misdemeanors, and total bars for certain felonies, including:

    a.  No person shall be capable of holding a civil office who shall stand convicted of a felony defined in article two hundred or four hundred ninety-six or section 195.20 of the penal law;

    b.  Any individual who stands convicted of a misdemeanor defined in article two hundred, article four hundred ninety-six or section 195.00 of the penal law may not hold civil office for a period of five years from the date of conviction, provided that in the event such conviction is the result of a plea agreement resulting in a plea to such charge in lieu of a plea or conviction of a felony defined in section 195.20, article two hundred or article four hundred ninety-six of the penal law , all parties to such

agreement may agree that the period of such bar may be for a period of up to ten years from the date of conviction;

82.    It also provides City and Municipality specific rules, including specific requirements for particular offices in the City of New York.

83.    And Local Law No. 15 provides bars to office that are inconsistent with that portion of the Public Officers Law.

84.    Thus, the Court should order CFB to appropriately play its administrative role in dispersing funds a qualified candidate is entitled to — and allow the ballot access litigation to play out in the normal fashion (without Monserrate at a disadvantage because he has not received the $8-to-$1 funding his donors are entitled to).

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(a) Issue a declaratory judgment that Defendants' actions have violated Plaintiffs rights under the Federal Constitution;

(b) Enter an injunction requiring Defendants to evaluate and issue matching funds for all donations to the Hiram 21 committee, following the ordinary error and omission process;

(c) Grant Plaintiffs their attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988;

(d) Grant any other and further relief that the Court may determine to be necessary and proper

Dated:  April 8, 2021.

Respectfully submitted,

/s/

_____

J. Remy Green

COHEN&GREEN P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com